Matter of P.T. v T.R. (2004 NY Slip Op 51000(U))

[*1]

Matter of P.T. v T.R.

2004 NY Slip Op 51000(U)

Decided on August 25, 2004

Family Court, Orange County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 25, 2004

Family Court, Orange County
In the Matter of a Proceeding for Custody and Visitation Under Article 6 of the Family Court Act P.T., Petitioner,
against
T.R., Respondent.
V-2809-04

Stephanie McAleer, Esq., Attorney for Petitioner, 5208 Route 9W, Newburgh, New York 12550. Satz and Kirshon, P.C., Attorneys for Respondent, 309 Mill Street, Poughkeepsie, New York 12601. Kimberly M. Williams, Esq., Children's Rights Society, Inc., Law Guardian, 213 West Main Street, P.O. Box 1002, Goshen, New York 10924.

Debra J. Kiedaisch, J.
This is a motion filed by the respondent biological father of the subject child, A., who was born on November 15, 1988. The motion seeks dismissal of the underlying proceeding, filed with the Court on June 14, 2004, in which A.'s step-father seeks custody of A..
This proceeding is brought against the tragic background of A.'s mother having been murdered by an unknown assailant on June 9, 2004. A.'s biological parents were divorced in August, 1991. The parents were granted joint legal custody of A. with primary physical custody of A. granted to the mother. Following the divorce, the respondent, in 1992, relocated to Nebraska. The mother and A. reside in New York. The respondent agrees that since the age of three A. has primarily resided with the mother and attended Marlboro, New York schools. The petition alleges the mother married the petitioner in 1991 and that a daughter, A.'s sister, was born to the marriage on May 12, 1993. In 1996 this Court issued an order, upon consent of A.'s parents, in which the respondent was granted visitation with A. including six weeks during the summer and several other weeks per year. The order also provided the respondent would have access to A.'s school records. The respondent pays child support for A. pursuant to Court order and there is no showing he is in arrears.
The petition alleges that it would be in A.'s best interests to have custody awarded to the petitioner step-father. The petition alleges, essentially, that A. is suffering from the sudden tragic loss of her mother and it would be extremely traumatic for A. if she was uprooted from the home and family she has known, and required to live with her biological father in Nebraska. The petition alleges, on information and belief, that A. would prefer to remain in the petitioner's home, that the respondent lacks sufficient housing for A., and that the respondent has not made "significant overtures to establish and maintain a meaningful relationship" with A.. These allegations are challenged by the respondent in his affidavits.
The respondent moves to dismiss the petition on the ground the petition fails to state a cause of action upon which the relief sought, namely, custody of A. to the petitioner step-father, may be granted (CPLR 3211[a][7]; FCA 165[a]). The motion to dismiss the petition alleges that as a matter of law the respondent biological father's right, as the surviving natural parent, to the custody of A. is superior to the claim for custody of A. by petitioner, who is a biological stranger to A..
The seminal case in this area of law is Bennett v. Jeffreys, 40 NY2d 543. In that case the Court stated:

"The State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances. If any of such extraordinary circumstances are present, the disposition of custody is influenced or controlled by what is in the best interest of [*2]the child."
In Bennett v. Jeffreys, 40 NY2d 543, the Court expressly held upon the facts of that case that there was not an abandonment or persistent neglect by the mother, who was seeking to gain custody of her child, but that an eight year separation between the mother and child, which was for most of the child's life, presented "extraordinary circumstances" sufficient to trigger the best interests inquiry concerning the disposition of the child's custody. The Court went on to state that:

"The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child, where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody."
While this case involving divorced adult parents in which one necessarily became the primary custodial parent, and the other became the non-custodial parent, differs from the reasons for the parent/child separation which occurred in Bennett v. Jeffreys, 40 NY2d 543, all of the factors unique to this case must, nevertheless, be considered and evaluated against the standard enunciated in Bennett v. Jeffreys, supra. The respondent appears to argue in his reply papers that fault, i.e. abandonment, neglect, surrender, or grievous misconduct, on his part is required before his right to custody of A. may be challenged. However, Bennett v. Jeffreys, supra, teaches that it is not only abandonment, neglect, surrender, or grievous misconduct on the part of the natural parent which may displace the parent's right to custody. To automatically enforce the parent's custodial right against non-parents, where the child's relationship with a natural parent may have become attenuated, may in conjunction with other unique circumstances pose the possibility of serious adverse consequences to the child. As restated by the Court of Appeals in the case of Matter of Michael B., 80 NY2d 299, at page 314, in re-affirming its holding in Bennett v. Jeffreys, supra:

"It is plainly the case, for example, that a 'child may be so long in the custody of the nonparent that, even though there has been no abandonment or persisting neglect by the parent, the psychological trauma of removal is grave enough to threaten destruction of the child.'" Bennett v. Jeffreys, 40 NY2d 543, 545-546 also recites that a biological parent's fundamental right to parent his or her child is of constitutional dimension (Bennett v. Jeffreys, supra, p 546 citing Stanley v. Illinois, 405 U.S. 645, 651; 92 S.Ct. 1208, 1212-1213 citing Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 626; Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110; May v. Anderson, 345 U.S. 528, 533, 73 S.Ct. 840, 843; Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442). The case stands for the proposition that the ordinarily paramount custodial right of a parent may properly be curtailed where there are "extraordinary circumstances" present and grievous effects upon the child may result if the right is enforced such that curtailment of that right is necessary for the welfare of the child as well as just under the circumstances. Bennett v. Jeffreys, supra, does not prescribe any particular set of circumstances as constituting "extraordinary circumstances". Each case must be evaluated according to its own circumstances. The parties in their affidavits controvert each other's factual allegations as to the quality and consistency of A.'s contact and relationship with her biological father, and his efforts to establish and maintain a meaningful relationship with her. Such controverted allegations cannot be resolved on the motion papers alone. The issue is sufficiently presented that while it appears that A., almost 16 years of age, has had contact and visitation with respondent that the intimate day to day family that A. has known for most her life consisted of her mother, step-father, and sister. A.'s mother was suddenly and brutally taken from her. Against [*3]the background of such traumatic and unsettling deprivation, the genuine possibility presents itself that there could be greatly adverse effects upon A.'s mental and emotional health were A. summarily permanently removed from the home, school, surroundings, and friends which she has known for most of her life. In this regard, the Law Guardian assigned to represent A. supports the step-father's petition for custody asserting, among other things, that A. suffers from depression, and that removing her from the step-father's household would be detrimental to A.'s mental health and stability. The respondent, in a responding affidavit, questions whether A. suffers from depression and asserts it would further A.'s emotional well being were she to come to live in his household. Again, the accuracy of the allegations as to A.'s emotional health cannot be resolved on conflicting motion papers alone.
The respondent is wholly correct in his assertion that the petitioner step-father has the burden of proving that the petitioner has standing to seek custody before the Court may reach the issue as to which of the parties should have custody of A. upon a "best interests of the child" evaluation (Bennett v. Jeffreys, 40 NY2d 543, 548).[FN1] The Court wishes to make clear to the parties that it is not making at this time any determination as to the merits of the petition including whether extraordinary circumstances exist. However, the way A. lost her mother, A.'s living in the step-father's household with her mother and sister for most of her life, the possible effects upon A., and the issues raised concerning the extent of A.'s contact with her biological father, are sufficient to raise an issue of "extraordinary circumstances" which could provide standing for the petitioner to seek custody of A.. Under the circumstances, it cannot be ruled on this motion that the petition fails to state a cause of action.
Accordingly, the respondent's motion to dismiss the petition is denied.
Dated: Goshen, NY E N T E R
 August 25, 2004
 _______________________________
 HON. DEBRA J. KIEDAISCH, J.F.C.

Footnotes

Footnote 1:Nor are "extraordinary circumstances", as the Court uses that term in Bennett v. Jeffreys, 40 NY2d 543, to be based upon who can financially provide better for the child or who has spent more money on the child. Petitioner and his attorney are critical of the amount of support paid by the respondent, and argue petitioner spends more on A. than respondent.