In the Matter of RUTH "J",* Appellant, v JOHN R. BEAUDOIN, as Rensselaer County Commissioner of Social Services, Respondent.

Third Department, December 20, 1976

* Name fictitious for purposes of publication.

*Mark R. Sonders* for appellant.

*Louis Quinlan* for respondent.

HERLIHY, J. Kimberly "J"* was born on April 5, 1962. In May of 1974, after the death of her husband and when Kimberly was 12 years old, petitioner voluntarily signed a surrender instrument (Social Services Law, § 384) thereby committing the guardianship and custody of her daughter to an authorized agency, the Rensselaer County Department of Social Services (Agency). The surrender instrument provided in part: "Said surrender and commitment shall be for an indefinite period, and until I notify the Commissioner in writing, that I revoke this instrument and request that the child be returned to me." Approximately 18 months after the surrender of Kimberly, petitioner revoked the same in writing and demanded the return of her daughter. The Agency refused. Petitioner commenced this proceeding to compel the return of Kimberly to her custody (Social Services Law, § 358-a). The Family Court denied petitioner's application, holding that the best interests of the child dictated that she remain in her foster home placement. This appeal ensued.

The record establishes that the mother at all times has acted in good faith; that she contacted the Agency in the first instance because her child was having behavior problems and that she signed the surrender agreement in good faith, believing that her child would be returned to her upon giving notice to the commissioner. There is no issue here as to the mother's character or behavior and that she has a suitable residence and the necessary financial means to properly care for her child, for whom she has always displayed love and affection. Under such extant circumstances the child belongs with the mother. In *People ex rel. Patricia "BB" v Albany County Dept. of Social Servs.* (47 AD2d 974, 975) this court stated: "We cannot agree that the burden is upon the petitioner to prove that she is now fit to take care of the child, and the best interests of the child would be served by placing it with the petitioner. In such instances, the burden rests not upon the mother to show that the child's welfare would be advanced by being returned to the mother, but rather upon the nonparent to prove that the mother is unfit to have her child *(People ex rel. Kropp v Shepsky* [305 NY 465], *supra).* The law contains the presumption that the best interests of the child will be

---

* Name fictitious for purposes of publication.

promoted by returning the child to the custody of its natural parent *(People ex rel. Scarpetta v Spence-Chapin Adoption Serv.* [28 NY2d 185], *supra)."*

It would appear from the present record that the wishes of a teenage child are being given priority over the rights of a parent. As we have stated on numerous occasions, while the wishes of a child should be considered, that alone is not sufficient or determinative of the issues involved. It is interesting to note that the Law Guardian by way of a "letter" stated: "Infant Kimberly felt that her mother wanted and treated her as a companion; whereas, she was treated as a person by her foster parents". It is difficult under the circumstances to rationalize the distinction as most parents seek the companionship of their children.

There is a delicate balance between the rights of the natural parent and the Agency and where, as here, the court adopted the incorrect legal principle in arriving at its decision, and where the balance would appear to favor the mother (the court apparently gave no consideration to her testimony) the issue of the suitability of the natural parent should be determined prior to any rights or claims of the Agency.

It is readily apparent that the social good inherent in the voluntary surrender of children under circumstances which indicate a need for an immediate change of custody, but not because of any unfitness or neglect by the parent, is undermined by adopting a policy which will essentially result in a revocation of the written promise to return the child. If there are circumstances which would justify terminating parental custody, either permanently or temporarily, the respondent and the court should proceed on that basis and not on the "best interests" basis which is a much weaker test in terms of recognizing parental rights and preferences. Perhaps in the alternative, the correct judicial decision-making standard under subdivision (7) of section 358-a of the Social Services Law is the best interest of the child with the presumption that the child's best interest will be promoted by returning the child to its natural parent in the absence of abandonment, a showing of unfitness, or some other supervening reason why the parent should be deprived of custody (cf. *Matter of Marian PP v Marian OO,* 50 AD2d 1053). It should be noted that the custody of the infant was never granted to the respondent on any long-term basis and the petitioner has not by inaction created a situation where in fact a long-term custody had

existed so as to invoke the rule favoring the stability of continuing custody in a person now having possession of the infant (see *Obey v Degling,* 37 NY2d 768, 770, 771).

While *Bennett v Jeffreys* (40 NY2d 543) established a "best interest" test as to a child's welfare, the present circumstances do not fall within *Jeffreys* and should not be applied.

The order should be reversed and matter remitted for such further proceedings as may be deemed appropriate. Pending the outcome of any hearing which should be conducted, Kimberly should remain in her current foster home placement, provided, however, that such proceeding is to be commenced within 10 days from the entry of this order and, if not, the infant should be returned to her mother forthwith.

The order should be reversed, on the law and the facts, with costs. Settle order on notice.

MAHONEY, J. (dissenting). We dissent.

As stated by the Court of Appeals in *Bennett v Jeffreys* (40 NY2d 543), courts may inquire into the best interests of a child to determine custodial disposition only when there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, extended disruption of custody or other equivalent but extraordinary circumstances which would drastically affect the welfare of the child. Herein, there was no finding below that the mother abandoned or neglected her daughter nor that she was an unfit parent. The sole issue, then, is whether the court may invoke the decisional and statutory law applicable to the "best interest" test of a child's welfare where, as here, the parent voluntarily surrenders her child, with the reservation that she may revoke the surrender, and, again as here, does in fact revoke it. In our view, the court not only may but should inquire into all the surrounding circumstances to determine how the best interests of the child should be protected, and the implied contractual right in the petitioner to have her child returned upon demand cannot prevent such a review. In matters involving the custody of children, courts must act as *parens patriae* and look at all the facts to determine what is in the best interests of the child.

In reaching its conclusion that Kimberly should remain with the nonparent custodian, the Family Court relied upon the testimony of Dr. Mindell, a child psychiatrist who conducted interviews with petitioner, the foster mother and Kimberly, as well as an *in camera* interview with the nearly 14-

year-old infant. Dr. Mindell testified that as of the date of the surrender both Kimberly and her mother were undergoing extreme emotional distress because of the husband-father's death; that the child exhibited behavioral difficulties evidenced by bed wetting, erratic attendance at school, poor grades, temper tantrums, recurring nightmares, acts of disobedience and two episodes of self-inflicted injury. These behavioral difficulties, in the doctor's view, have been largely alleviated in the 18 months that Kimberly has resided in the foster home. Her attendance at school is good, her grades have advanced from failing to an A-B level, the bed wetting has stopped along with the nightmares and Kimberly has developed a relationship with the foster family that is supportive of her needs. Dr. Mindell further testified that while petitioner was not a neglectful mother, her desire to have her daughter returned was premised more on her own personal needs than those of the child. Next, Kimberly, now almost 14 years old, expressed a desire to remain where she is.

Dr. Mindell recommended that it would be in the best interest of Kimberly to remain in the foster home. However, both Dr. Mindell and the Family Court used the unfortunate phrase that leaving Kimberly in the foster home was "the least detrimental alternative available". Such a standard implies that both competing interests are detrimental. If that were true under the facts of this case, a remittal would be required to inquire if the child should not be removed from the cusody of both the parent and nonparent. A child's best interest is not controlled by whether a parent or nonparent would make a "better parent" (Bennett v Jeffreys, supra). Rather, the judgment of what is best for the child must rest on a consideration of whether the child is presently in the custody of the parent or the nonparent, the conditions that brought about the surrender of the child if custody is in the nonparent, the changes for the better, if any, since the surrender, the causes of the changes, the need or lack thereof for a continuation of the foster relationship and, as here, when the child is of an age to express an opinion, the view of the child (cf. Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196). Such considerations, however, do not dictate that the child's custody be routinely awarded to the natural parent (Bennett v Jeffreys, supra. See, also, Matter of Benitez v Llano, 39 NY2d 758, 759). The continued stable custody of a child is the essential principle (cf. Matter of Ebert v Ebert, 38

NY2d 700; *Obey v Degling,* 37 NY2d 768; *Dintruff v Mc-Greevy,* 34 NY2d 887, all cited in *Bennett v Jeffreys, supra),* and if such an arrangement exists between a child and a nonparent at the time that status is challenged, only strong, compelling reasons can be the predicate for the interruption of such a custodial relationship.

No such reasons are present in the case at bar. Clearly, Kimberly has improved markedly since residing in her present foster home. Not only have her interest in and grades at school improved but her behavioral difficulties have been ameliorated to a degree that permits an interpersonal relationship with schoolmates and others that is both healthy and indicative of growth. We feel that Kimberly's best welfare is served by continuing her present placement, not because it is "the least detrimental alternative available" but, rather, because it is in Kimberly's best interest. We have also considered the "letter" brief of the Law Guardian, wherein he expressed the view that the child's interests would be best served by denying petitioner's application. In so ruling, we are not unmindful of the mother. However, a parent's right of parental primacy in matters of custody must give way to the best interests of the child. Further, there is no reason why the petitioning mother cannot see her daughter on a daily basis if she wishes and thereby encourage a healthy growth in their relationship.

The order should be affirmed.

GREENBLOTT, J. P., and KANE, J., concur with HERLIHY, J.; MAHONEY and LARKIN, JJ., dissent and vote to affirm in an opinion by MAHONEY, J.

Order reversed, on the law and the facts, with costs. Settle order on notice.