OPINION OF THE COURT
 

 Memorandum. Petitioner mother appeals from orders of the Appellate Division which,
 
 inter alia,
 
 reversed a judgment of the Supreme Court sustaining a writ of habeas corpus and granting custody of two small children to their maternal grandmother. The effect of the Appellate Division orders was to retain custodial rights in the paternal grandfather with whom the children had been living for several months following the death of their father.
 

 Emerging from the trial held by Special Term are various significant facts. Petitioner has had a history of psychological and emotional problems. She was responsible for the death of one child several years ago, while she was suffering from amphetamine poisoning, and has more recently attempted suicide. While she was in the hospital following the suicide attempt, her husband died, and the paternal grandfather took the two children. Upon her release from the hospital, petitioner went to live with her mother and commenced this proceeding. Two psychiatrists testified on petitioner’s behalf. They declared that the early incident had been the result of the amphetamine poisoning, and that the suicide attempt was a result of marital discord, constant recriminations by the husband and guilt feelings resulting from the death of the first child. They testified that in their opinion petitioner is no longer suffering from psychiatric problems, and is a fit mother for the two children. The trial court was apparently impressed by this testimony, although not to the extent of returning the children to their mother’s custody. Faced with a seemingly insoluble dilemma, the court awarded custody to the maternal grandmother, realizing of course, that the petitioner lived in the household. Thus, the court hoped to prevent the possibility of any abuse by placing legal custody in the grandmother, while at the same time not disturbing what the court deemed to be a healthy parent-child relationship. The Appellate Division reversed, in a short and rather uninformative memorandum, stating only that "Under the circumstances presented, the best interests of the children would not be served by
 
 *667
 
 awarding custody to the maternal grandmother”, thus leaving custody with the paternal grandfather.
 

 The present whereabouts of the two children and the maternal grandmother are unknown. Following Special Term’s decision, the children were placed with the grandmother, and the three disappeared a few days prior to issuance of the Appellate Division order mandating return of the children to the paternal grandfather. They have apparently left the State, perhaps in an attempt to avoid the jurisdiction of the New York courts.
 
 [1]
 
 If this action were taken on advice of counsel, it is considered to be a practice which we unequivocally condemn. Upon oral argument before this court, appellate counsel for petitioner was “not able” to give any information as to the whereabouts of the children or the maternal grandmother, except to state he had been advised the children were well.
 

 Upon the record before us, and in view of the terse and succinct memorandum of the Appellate Division, we are unable to determine that which must always be the fundamental question in any controversy involving custody—the best interests of the children. There is simply insufficient current information before us for a balanced decision in a difficult situation such as this. It is quite clear that the petitioner has had severe psychological problems in the past, and it is important that it be determined whether these problems still persist. To reach such a determination, a more comprehensive, current psychiatric examination by court-appointed psychiatrists may well be indicated.
 

 It would also appear that the courts below have not sufficiently investigated the living conditions in the homes of the other possible custodians, the maternal grandmother and the paternal grandfather, or, indeed, the psychological fitness of these individuals (see
 
 Matter of Bennett v Jeffreys,
 
 40 NY2d 543). This is especially important in view of the actions of the maternal grandmother in fleeing the State with the children and implicit indications in the record of some lack of stability in the home situation of the paternal grandfather. In view of
 
 *668
 
 the serious questions presented by this case, independent investigation of all possible custodians is needed to supply the information necessary as a basis for an informed judgment regarding the best interests of the children.
 

 Accordingly, the orders of the Appellate Division should be reversed, with costs, and the proceedings remitted to Supreme Court, Suffolk County, for a new hearing,2 on condition that the two children be produced and a bond be posted to insure that they remain within the jurisdiction of the court; if these conditions are not fulfilled within 30 days from the date hereof, this appeal is dismissed, with costs.
 

 Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in memorandum.
 

 Orders reversed, etc.
 

 [1]
 

 . It is to be hoped that this tactic will soon become a thing of the past. The Legislature has recently enacted, as article 5-A of the Domestic Relations Law, the Uniform Child Custody Jurisdiction Act (L 1977, ch 493). This uniform act, which to date has been enacted by at least 18 other jurisdictions, including Florida and California, is intended to eliminate forum-shopping via child-snatching in custody cases by basing jurisdiction on a "home state” concept rather than on the mere physical presence of the child within the State. (See Foster & Freed, New York’s New Child-Custody Jurisdiction Act, NYLJ, Sept. 23, 1977, p 1, col 1.)