Wachtler, J.
(dissenting). In my view we can no longer say, as Special Term did, that taking this boy away from his foster parents would have no detrimental effect upon him. Special Term’s order, which was entered over a year ago, has never been enforced and since then the circumstances have substantially altered.
As a result of stays granted in connection with two appeals, the child has remained with his foster parents and has now lived with this family for over two years. During this period the child’s attachment to his foster parents has undoubtedly grown particularly in view of the fact that he has been with them since he was four days old and has known no other parents. Neither his natural mother or father or any other relative has visited him since he was placed with the petitioners. To completely sever his relationship with his foster parents at this stage, under these circumstances, borders on the inhumane.
Indeed the Legislature has provided that when foster parents have cared for a child for two years or more they may apply to adopt him and are entitled to a preference over all other applicants (Social Services Law, § 383, subd 3). The primary purpose of the statute, like all child custody rules, legislative and judicial, is to serve the best interests of the child (see, e.g., People ex rel. Cusano v Leone, 43 NY2d 665, 667; Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d 196). In this case it can hardly be doubted that it is in the best interest of the child to remain with his foster parents. The question is not whether the foster parents should be denied the benefit of the statute because they refused to surrender the child upon request and, by obtaining stays, delayed his return. Certainly the child cannot be held responsible for the *392 delays. To deny him the benefit of the statute would be to ignore the very purpose for which the statute was created.
In addition it should be emphasized that this is not a case of "child snatching”. The foster parents did not attempt to remove the child from the jurisdiction or otherwise resort to illegality or defiance of court orders (cf. Matter of Nehra v Uhlar, 43 NY2d 242). The agency’s right to demand return of the child, after the natural mother finally surrendered him for adoption and after the foster parents themselves expressed a desire to permanently adopt him, posed a novel question. And, as noted, the foster parents’ custody throughout the litigation has been continued by court-ordered stays, the most recent having been granted by this court.
This is a unique situation which should not recur. Now the court has held, and I agree, that foster parents must return the children entrusted to their care upon demand unless they can show that there would be a "detrimental impact upon the child resulting from his or her removal from foster care.” In the future this problem should rarely occur particularly in the typical case, as here, where the child was a four-month-old infant when the agency requested his return. In these cases then there will generally be little or no basis for granting a stay and therefore no threat of seriously delaying or disrupting the foster care and adoption programs. Unfortunately, the majority, in its overriding concern for the outcome of future cases and apparent need to set an example in this case, has overlooked the unique predicament of this two-year-old boy by wrenching him away from the only parents he has ever known.
Accordingly the order of the Appellate Division should be reversed.