Gabrielli, J.
(dissenting). I dissent and vote to affirm, for all the well-documented reasons stated by the Appellate Division.
First, I do not agree with the majority that the present proceeding, instituted pursuant to section 392 of the Social Services Law, is not the "appropriate judicial vehicle in which to determine the permanent status of the child.” Unmentioned are the detailed findings of the Appellate Division founded upon a substantial record; and the result of a reversal here is to embrace the "objective” of the Family Court whose findings are disturbingly meager and woefully inadequate. As will be noted, that result will have effectively predetermined the outcome of the proceeding and foreclosed any real hope the natural mother may have had in regaining the custody of her child.
*1028 Section 392 of the Social Services Law authorizes the Family Court to periodically review the foster care status of, inter alia, a child whose custody has been transferred temporarily to an agency by a parent pursuant to section 384-a of the Social Services Law, and provides for the following alternative dispositions:
"7. At the conclusion of * * * [a] hearing, the court shall, upon the proof adduced, in accordance with the best interest of the child, enter an order of disposition:
"(a) directing that foster care of the child be continued; or "(b) in the case of a child who has been committed temporarily to the care of an authorized agency by a parent, guardian or relative, directing that the child be returned to such parent, guardian or relative; or
"(c) in the case of a child who has been committed temporarily to the care of an authorized agency by a parent, guardian or relative, directing that the agency institute a proceeding to legally free such child for adoption, and upon a failure by such agency to institute such a proceeding within thirty days after entry of such order, permitting the foster parent or parents in whose home the child resides to institute such a proceeding; or
"(d) in the case of a child whose guardianship and custody have been committed to an authorized agency by an order of a surrogate or judge of the family court or by a surrender instrument or who has been judicially declared to be a permanently neglected child, directing that such child be placed for adoption in the foster family home where he resides or has resided or with any other person or persons.”
While section 392 provides that temporary foster care may be prolonged, an order may be made pursuant to paragraph (b) of subdivision 7 for a permanent disposition of custody by directing that the child be returned to a natural parent who temporarily entrusted the care of the child to an authorized agency, or by ordering that the necessary proceeding be instituted to free the child for adoption. Finally, in the event that such a proceeding has already terminated in a determination of permanent neglect, the child may be placed for adoption. Plainly, section 392 is an appropriate proceeding to resolve the essential issue in this case, whether the child should be returned to the natural mother or remain with foster parents either temporarily, or permanently as an adopted child. Only following a determination that the child *1029 should not be returned to the natural mother, should a permanent neglect proceeding be commenced. And, as indicated below, in the context of a permanent neglect proceeding pursuant to article 6 of the Family Court Act, even if neglect cannot be established, the result would be a continuation of temporary foster care, prolonging the "parental limbo” this child has been living in for most of her life.
To the extent the majority memorandum rejects the conclusion of the Appellate Division that the child should be returned to her natural mother, I am in complete disagreement. The Appellate Divison determination is based on detailed findings gleaned from a substantial record including, inter alia, the entire file of the Department of Social Services in the case containing the case history of the mother and child. It is well to here emphasize that the Appellate Divison applied the correct standard of review, the best interests of the child, mandated by section 392 of the Social Services Law and articulated by our holding in Matter of Bennett v Jeffreys (40 NY2d 543) which did not involve a statutorily authorized proceeding to review foster care status.
Both the Family Court and the Appellate Division found that a prior neglect proceeding terminated in an adjudication that the child was a neglected child solely to avoid her deportation when the natural mother’s student visa expired and immigration authorities were about to deport both the child and the mother. In that proceeding it was expressly stated that "the court has [made] no finding concerning any acts of the mother that might have constituted a neglect.” Indeed, it is conceded by all parties that the prior neglect proceeding was merely a sham to avoid the child’s deportation. It is undisputed that throughout the period the child was in foster homes the natural mother successfully struggled to finance and complete her studies so that she could provide a proper home for herself and her child while at the same time pursuing various legal means to legitimatize her status in this Country and avoid deportation to India where she had no immediate family remaining. Indeed, the only reason the child was temporarily surrendered to the Department of Social Services was to provide her with foster care while the mother completed her education in order to obtain employment and provide an adequate home for her child. At the present time, according to a representative of the Department of Social Services, the mother is employed and lives in a "nicely fur *1030 nished” apartment "in a nice neighborhood and in a nice area.” She has anticipated the return of her child by purchasing needed furniture, contacting a public school and arranging for the child to be transported home from school and for after-school day care. The Appellate Divison concluded that the mother had not abandoned the child and is not an unfit mother but "[t]o the contrary, under the most trying circumstances, [the mother] manifested qualities of courage, industry, persistence and intelligence”. In light of these findings I can find no fault with the Appellate Division’s conclusion that the "best interests of the child” warrant her return to a natural mother who has demonstrated such admirable qualities in the face of tremendous hardship. Additionally, I would note that upon oral argument, it was conceded that the foster mother and father who seek to adopt this child are 58 and 60 years of age, respectively.
The majority states that "[t]he interests of the child, her natural mother and her foster parents will best be served by resolving the status of the child and the rights and obligations of the parties” in the permanent neglect proceeding. As indicated, a permanent neglect proceeding is based on the premise that the natural mother should not obtain custody of her child. Section 631 of the Family Court Act provides for the only three alternatives available in a permanent neglect proceeding:
"At the conclusion of a dispositional hearing on a petition permanently to terminate custody, the court shall enter an order of disposition:
"(a) dismissing the petition in accord with section six hundred thirty-two; or
"(b) suspending judgment in accord with section six hundred thirty-three; or
"(c) permanently terminating custody of the parent or other person responsible for the care of the child and awarding custody in accord with section six hundred thirty-four.
"An order of disposition shall be made, pursuant to this section, solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular disposition.”
In sum, pursuant to section 632, the Family Court may dismiss the petition but this determination merely continues the child in her present limbo status. The same effective *1031 result is obtained under section 633 which permits the court to suspend judgment for a one-year period (renewable for an additional year upon a showing of exceptional circumstances); and, finally, under section 634 the court can permanently terminate the right of the natural parent and either temporarily or permanently award custody of the child to the Department of Social Services or the foster parents. Of consuming significance, it must be borne in mind that a permanent neglect proceeding, therefore, cannot resolve the basic question whether the child should be returned to her natural mother; rather, that issue is predetermined adversely to the natural mother upon the commencement of the neglect proceeding because no alternative is available under article 6 of the Family Court Act to return the child to her mother immediately. Either the child is entrusted to the care of the agency or the foster parents or she remains in the limbo status of temporary foster care. The necessity for a permanent neglect proceeding disappears in light of the finding by the Appellate Division, based on a complete record and detailed case history, that the mother did not neglect her child but maintained close contact throughout the years of her determined and lonely struggle to obtain an education in a strange country.
While Matter of Bennett v Jeffreys (40 NY2d 543, supra), is, strictly speaking, not controlling here because it did not involve a child temporarily placed with the Department of Social Services pursuant to statute, that case bears a close resemblance to the instant case in that there was a lengthy period during which the natural mother was not permitted to have custody of her child. Significantly, the Appellate Division, as I have noted, followed the precise guidelines articulated in Matter of Bennett v Jeffreys (supra) in deciding that the best interests of the child favored her return to the natural mother.
The reversal by this court effectively destroys any opportunity for the natural mother to obtain custody of her child; and such a holding by this court ignores the amply supported conclusions of the Appellate Division that the natural mother has not been neglectful of her daughter.
Chief Judge Breitel and Judges Jasen, Jones and Fuchs-berg concur; Judge Cooke concurs in result in a separate opinion; Judge Gabrielli dissents and votes to affirm in another opinion in which Judge Wachtler concurs.
*1032 Order reversed, without costs, and the order of the Family Court, Rockland County, reinstated in a memorandum.