■ JOSEPH ROTHMAN, Appellant, v VIRGINIA ROTHMAN, Respondent.—In a matrimonial action in which the plaintiff father had previously been granted a judgment of divorce, he appeals from an order of the Supreme Court, Queens County, dated January 14, 1977, which, inter alia, granted defendant's motion to amend the judgment of divorce to the extent of awarding custody of the infant issue of the marriage to defendant instead of him. Order reversed, on the law, the facts and in the interest of justice, without costs or disbursements, motion denied, and action remanded to Special Term for a hearing on the question of visitation rights and for the making of an appropriate determination in connection therewith. The parties were married in May, 1969, in New York, and a child was born late in the year. Marital difficulties developed and the couple separated sometime in late 1972. In February, 1973 defendant obtained an order from the Family Court requiring support of $40 biweekly (later modified to $15 weekly), allowing the child to remain with defendant, and granting visitation to the plaintiff. In October, 1973 the parties agreed that the child would be best off staying with plaintiff's sister in Puerto Rico and they consented

to having the child live with her and her husband. In February, 1974 the defendant was served with a summons and complaint in this matrimonial action. She failed to serve an answer, an inquest was held and the court granted an uncontested judgment of divorce to the plaintiff on the ground of abandonment. The judgment, dated May 22, 1974, granted custody of the child to the plaintiff father. The defendant claims that she did not learn of the divorce until June or July, 1974, when she examined the court file. The child remained in Puerto Rico with her paternal aunt until June, 1976, when plaintiff's sister returned to New York with the child for a visit. By that time the plaintiff had remarried and had just moved into a home in Central Islip. He and his new wife were soon expecting the birth of their own child. Plaintiff then told his sister that he would now be able to care for his daughter, and, since that time, the child has lived in her father's home. When the defendant learned that the child would be staying with the plaintiff, she moved to amend the judgment of divorce so as to change custody. Following a hearing, Special Term granted the motion. A stay ordered by this court has allowed the child to remain with her father. It is a cardinal rule in custody cases that the controlling principle to guide the court must be the best interests of the child (see *Matter of Bennett v Jeffreys,* 40 NY2d 543; *O'Neill v O'Neill,* 60 AD2d 571). The credible evidence adduced at the hearing requires us to reverse the order appealed from in the best interests of the child. The evidence reveals that both parents abandoned the child when they agreed to allow the plaintiff's sister to care for her in Puerto Rico. Although both the parents inquired as to her well-being and occasionally sent either gifts or small sums of money, neither parent provided the emotional support or interest that should have been expended. However, it also appears that once the plaintiff remarried and moved into his new home where he could properly care for his daughter, he took the necessary steps to provide her with a happy family life. Both the psychiatric report and the decision of Special Term found that both parents were competent to care for the child. The fine adjustment that the child has made since she has been with her father causes us to believe that her best interests will be served by continuing that relationship. She is enrolled in school and has made many new friends in her community. She gets along well with plaintiff's new wife and her baby brother. If she were to be placed with defendant she would occupy her own room, but it would be in a two-family house occupied by other relatives of defendant, and, at least to a certain extent, her care would be dependent upon defendant's mother and grandmother. Additional testimony indicates that the child is affected by anxiety which causes a bedwetting problem. Since her return to her father's home she has had no recurrence of this problem except prior to her court appearance and visitation with defendant. Although the evidence indicates that both parents are in a position to give the child suitable homes, there is no evidence that the welfare of the child would be adversely affected by continuing custody with the plaintiff. (See *La Veglia v La Veglia,* 54 AD2d 727; *Mantell v Mantell,* 45 AD2d 918.) We find substantial evidence that to require this young child to have yet another home, school, and community to adjust to, would be detrimental to her well-being. Hopkins, J. P., Rabin, Shapiro and O'Connor, JJ., concur.