OPINION OF THE COURT
Howard Miller, J.
The respondent is the mother of two children, Gina and Paula, ages seven and five respectively. The respondent is a former heroin addict, receiving treatment for the past nine months for such addiction at Odyssey House on Wards Island in New York City. Said children, as part of the program, are residing with the mother at the treatment center. The pe *754 titioner is the maternal grandmother of Gina and Paula. She has commenced this proceeding to gain custody of the said children. The respondent opposes the petition and seeks to retain the children with her at Odyssey House.
The petitioner, a widow, resides in a trailer unit located at Mt. Ivy Trailer Park near Route 45. The trailer is a well kept residence with two bedrooms, one bedroom with bunk beds available for the two children. Petitioner is employed as a school bus driver for the Clarkstown School District chauffering children from the ages of 5 to 17 to and from school. Her hours extend over several shifts from 6:00 a.m. to 9:15 A.M., 11:00 a.m. to 1:00 p.m., 4:00 p.m. to 4:30 p.m. The petitioner stated that if the children were placed in her custody, she would give up the morning shift to be with them. On many occasions prior to her entry in Odyssey House, the respondent left her children with the petitioner for periods from two weeks to several months while the respondent attended to her own problems. On several instances, both the respondent and the children lived in the petitioner’s home.
The respondent’s past life-style has been marked with unrest and difficulties. She has had two marriages and divorces. The children herein were born of the first marriage which had lasted about five years. The second marriage lasted less than one year. In June of 1977, the respondent had a nervous breakdown accompanied with a suicide attempt. Respondent was twice prior to the last episode, a user of heroin and twice "kicked the habit” cold turkey. She openly admitted to selling and cutting heroin at two locations to support a $300 per day habit. On the latest episode, upon arrival at the detoxification unit at Summit Park Hospital, she had already entered severe withdrawal reaction. The result was her hospitalization, the following voluntary commitment to Odyssey House and her present participation in that program.
The respondent in her testimony stated that in order to gain admittance into the Odyssey House program, she was required to surrender the children to the Bureau of Child Welfare for the City of New York. The surrender appeared to be conditioned upon the continuance of the respondent in the Odyssey House program with the threat that the surrender would be implemented upon the mother leaving the program prior to discharge. Under the said surrender arrangement, the children could find themselves in a strange foster home. The children are not chattels to be pledged as security or bar *755 gained for admission into the program no matter how beneficial the end result of the program is intended for the mother. There has been no adjudication of neglect, abuse, or abandonment of the children by the mother nor does any consent of the natural father appear.
The living accommodations of the children at Odyssey House are spartan. The children of the respondent share one room in which the walls are bare and drab. The only furniture in the room are the two beds with neither a chest of drawers, writing table nor chairs. Their clothing is kept in their mother’s room which is located on another floor at the facility. The food services appear to be institutional in nature. There are sparse relationships with the other children because of the few children in the age groups of Gina and Paula residing within the building in which the children are housed. Thus, the children spend much of their time together. The ingress and egress from the children’s area are controlled by locked doors, opened only upon the children calling an attendant on duty to unlock the door, even to go to the toilet. The children use the chair brought into the room by the mother for a writing surface upon which they can do their school work. The children testified that they seldom play outside or leave the center except to go to school. As for schooling, the children were bussed to a school in Manhattan on 118th Street and the East River Drive, where they are doing quite well.
The court has interviewed both children separately in chambers prior to the close of the hearing. Both children appear to be bright and willing to talk. They love their mother and are anxious to leave Odyssey House someday.
If, in the circumstances of this matter there would be no viable alternatives available for the caring of the children, it would be appropriate to provide housing for the children of the respondent at Odyssey House. The past record has clearly shown that the petitioner, the grandmother of Gina and Paula, is a good custodian of the children. She has cared for them for much of the time during their short lives. The children know their grandmother. The respondent’s claim that she was abused by her mother beaten with a rubber strap or locked in the basement was not supported by the other witnesses. The mother denied such acts. Respondent’s sister, Deborah, testified to a normal childhood and further stated that she was not beaten or locked in the cellar by either of *756 her parents nor did she ever witness such conduct against her sister, the respondent.
At the time of the crises in her married life, the respondent left the children with their grandmother, the petitioner herein. The grandmother offers to the children a more normal childhood in this formative stage of the children’s lives away from the more impersonal care of institutional living. They should be growing up in a more normal environment for young children. While the Odyssey House program appears to be a viable and successful method of rehabilitating the respondent the sole issue before the court is the best interest of the two infant children.
The right of a parent to rear a child and corresponding right of a child to be reared by its parent has been enumerated in leading case of Matter of Bennett v Jeffreys (40 NY2d 543, 546). That court (at p 546) commented on limitations of parental rights: "The day is long past in this State, if it had ever been, when the right of a parent to the custody of his or her child, where the extraordinary circumstances are present, would be enforced inexorably, contrary to the best interest of the child, on the theory solely of an absolute legal right. Instead, in the extraordinary circumstance, when there is a conflict, the best interest of the child has always been regarded as superior to the right of parental custody.”
This court holds that the forced residence of the children at the Odyssey House facility is such an extraordinary circumstance to support the removal of the children herein and giving custody to the petitioner, the maternal grandmother of the children, Gina and Paula.
The court notes from the testimony at page 44 of the transcript of that portion of the hearing on January 24, 1980 in the examination of the petitioner by her attorney, the following repartee:
"Q If your daughter successfully completes the program [Odyssey House] and is able to function properly, would you be willing to see her have custody of her children?
"A Yes.”
The court has little difficulty in reaching this decision and directs that the custody of the children, Gina Maria Capobianco and Paula Noel Capobianco, be forthwith awarded to Dorothy Marczan, the petitioner, their grandmother, subject to review by this court, upon due petition by the mother, *757 Dorothy Lou Capobianco, indicating her rehabilitation and showing that she has the means and capability of providing for the physical and emotional needs of the children.
It is the ultimate intention of this court to provide for liberal visitation with the children by the mother. However, pending the discharge of the mother from Odyssey House, the court hereby directs that the grandmother bring the children to Odyssey House for visitation with their mother one day each weekend until further order of this court.