In the Matter of WILLIAM I. et al., Respondents, v SCHE-
NECTADY COUNTY DEPARTMENT OF SOCIAL SERVICES,
Respondent, and SHIRLEEN J., Appellant.[*]

Third Department, July 12, 1984

### APPEARANCES OF COUNSEL

*Frederick W. Killeen* for appellant.

*Mary M. Coffin* for William I. and another, respondents.

*Martin Cirincione* for Schenectady County Department
of Social Services, respondent.

*Rebecca Morse Hout, Law Guardian.*

### OPINION OF THE COURT

KANE, J.

On September 28, 1978, Devan J. (born August, 1978)
was voluntarily placed in the temporary custody of the
Schenectady County Department of Social Services
(agency) pursuant to a revocable voluntary placement
agreement executed between the natural mother, Shirleen
J. (respondent), and the agency. At that time, the child was
placed in the foster care of petitioners. In November, 1978,
a visitation program was planned. Between November and
January, 1979, however, respondent was hospitalized on
several occasions for mental and emotional distress.

---

[*] Names are fictitious for purposes of publication.

Supervised visitation took place from December, 1978 through March, 1979, when a neglect proceeding was initiated against respondent for the removal of Devan and her older brother, Derrick, who was residing with respondent, from respondent's household. By order of Family Court, Derrick and Devan were placed in the temporary care of the agency for a period not longer than 18 months. Pursuant to that order, two-hour visits were to be arranged at least twice each month for Derrick and once each month for Devan. In addition, respondent was ordered to continue her treatment as an outpatient at the Ellis Hospital Mental Health Clinic and to continue her medication as directed. Derrick was placed with petitioners, where Devan continued to reside.

In March, 1979, respondent resided at the O.D. Heck Halfway House and visited Devan at a day care center. Thereafter, visitation continued every month while respondent resided with her aunt. In September, 1979, visitations were increased to two hours every other week and took place at respondent's apartment. Visitation increased again in October, 1979, with respondent being given unsupervised visits with Devan alone twice a month and visits with both Derrick and Devan twice a month. Through December, 1979, respondent fully cooperated with the agency and made good efforts to visit her children. Respondent indicated that she followed the visitation program and complied with Family Court's order because she wanted her children returned to her home. At no time did respondent indicate a desire to surrender her daughter for adoption.

Devan remained in foster care although visitation was increasing and the agency worker assigned to this case anticipated that Devan would be returned to respondent in the future. In June, 1980, the agency filed a petition seeking termination of respondent's parental rights with respect to both children, alleging that she was unfit by reason of mental illness. In April, 1981, the petition came on for trial and was dismissed by Family Court for failure to prove the allegations set forth in the petition. Thereafter, Derrick was returned to respondent (where he remains to the present) and Devan continued in the agency's place-

ment. In August, 1981, Family Court approved a stipulation between the agency and respondent which set forth a plan for the eventual return of Devan to respondent.

Petitioners, however, had in July, 1981 commenced a proceeding seeking custody of Devan. Meanwhile, visitation with respondent continued from August, 1981 through January, 1982, increasing from hourly visits to weekend visits. On January 25, 1982, Devan returned to respondent's home and visited petitioners on weekends.

Petitioners' custody proceeding was heard in April and May, 1982 in Family Court. Testimony was received from various witnesses, including expert psychological testimony on behalf of both petitioners and respondent. Thereafter, Family Court rendered a decision finding that extraordinary circumstances existed and that it was in the best interests of Devan to award custody to petitioners. Respondent appeals the order awarding custody to petitioners and reasonable visitation to respondent.

This case, which so directly concerns the parent-child relationship, weighs heavily on the court. As the Court of Appeals has observed: "Resolution of a dispute like the one presented, involving such paramount and basic concerns, demands faithful attention and adherence to the strong public policies and overriding principles which have governed * * * past decisions" (*Matter of Male Infant L.,* 61 NY2d 420, 423). In this regard, it is well established that a parent has: " 'a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood' " (*supra,* at p 426, quoting *People ex rel. Kropp v Shepsky,* 305 NY 465, 468). Accordingly, *Matter of Bennett v Jeffreys* (40 NY2d 543, 544) and its progeny instruct us that the "State may not deprive a parent of the custody of a child absent surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances". Upon a finding of any such extraordinary circumstance, the disposition of custody is determined by the best interest of the child (*Matter of Male Infant L.,* 61 NY2d 420, *supra; Matter of Bennett v Jeffreys, supra*).

Family Court properly applied the two-part test set forth in *Bennett* (*supra*). In doing so, it found that extraordinary

circumstances did exist in that Devan has been psychologically bonded to petitioners almost from birth and that "the initial removal of the child from the mother, and much of the subsequent separation, was a result of proper legal processes". Having established extraordinary circumstances, Family Court found that the best interest of the child was to be in the custody of petitioners. After reviewing the instant record, we conclude that Family Court lacked a basis for finding that extraordinary circumstances existed so as to permit it to look to the best interest of the child.

Since the record included no evidence of surrender, abandonment or persisting neglect, and the agency had previously failed to prove its case alleging respondent's unfitness, Family Court focused on the issue of disruption of custody and the surrounding circumstances. Specifically, Family Court found that extraordinary circumstances were presented by the lengthy separation of respondent and child and the psychological bonding of petitioners and child. However, where, as here, "virtually all the separation between parent and child occurred during the natural mother's attempts to regain custody, the separation does not amount to an extraordinary circumstance" (*Matter of Male Infant L.,* 61 NY2d 420, 429, *supra*). Moreover, although a child "may be so long in the custody of the nonparent that * * * the psychological trauma of removal is grave enough to threaten destruction of the child" (*Matter of Bennett v Jeffreys, supra,* p 550), such circumstance is not present herein.

The present case involves a long-fought custody battle between respondent, the agency and, now, petitioners. Throughout these proceedings, one fact remains undisputed: respondent wanted her children returned. She consistently made good efforts to cooperate with the agency's visitation plan. In addition, she abided by the conditions set forth in the various court orders and stipulations, utilizing several support services and continuing her medications. She moved from a halfway house to her aunt's home and ultimately established her own household. In fact, pursuant to the agency's plan, Devan was returned to respondent in January, 1982 and remained with her until Family Court's decision of August, 1982.

The testimony of the experts indicates that Devan developed a closer psychological bond with petitioners than with respondent but that this was not out of the ordinary in light of the time spent and experiences shared with petitioners. While petitioners' expert feared that the child might suffer emotional distress from being separated from petitioners, respondent's expert reported that the relationship between mother and daughter improved during the time they lived together. Thus, Family Court had no evidence before it which indicated that the child's welfare was, in fact, drastically affected by continuing custody with respondent. Therefore, no extraordinary circumstances are presented, and we must reverse.

The order should be reversed, on the law and the facts, without costs, the petition dismissed and the matter remitted to Family Court of Schenectady County for consideration of reasonable visitation between the child and petitioners.

MAHONEY, P. J., CASEY, WEISS and MIKOLL, JJ., concur.

Order reversed, on the law and the facts, without costs, petition dismissed and matter remitted to Family Court of Schenectady County for consideration of reasonable visitation between the child and petitioners.