Kavanagh, J.
Appeals from an order of the Family Court of Essex County (Meyer, J.), entered August 28, 2007, which, among other things, granted petitioners’ application, in proceeding No. 3 pursuant to Family Ct Act article 6, to modify a prior order of custody.
Edward Cumber (hereinafter the father) and Thelma O’Leary (hereinafter the mother) are the parents of three children (born in 2000 and 2001). The mother and father never married, but stopped living together in 2004, when the mother and three children moved into the home of her parents, Timothy O’Leary and Rosaleen O’Leary (hereinafter the maternal grandparents). A custody order was issued on consent that awarded the mother and father joint legal custody of the children, with the mother having physical custody as long as she continued to reside with the maternal grandparents and, if she moved from that home, the children were to remain with the maternal grandparents. In September 2004, the mother moved from the maternal grandparents’ home and the children continued to reside with the maternal grandparents pursuant to the terms of the consent order.
In July 2006, the father filed a modification petition seeking physical custody of the children. His mother, Debbie Cumber (hereinafter the paternal grandmother), and the mother also filed modification petitions asking that the mother and father be awarded custody of the children, to be shared with the paternal grandmother. While these petitions were pending, the children remained in the custody of the maternal grandparents.
The trial on these petitions commenced in March 2007. At the outset, Family Court dismissed the paternal grandmother’s petition for failing to state a cognizable claim of custody. The parties eventually agreed to the entry of an order, to become ef *1069 fective in July 2007,[1] that provided for the mother to be awarded primary physical custody of the children on condition that she live with the paternal grandmother. Within weeks after the consent order was signed, but prior to it taking effect, the mother left the paternal grandmother’s residence. The maternal grandparents then commenced their own proceeding, alleging that the mother’s move from the paternal grandmother’s home prior to the consent order taking effect constituted a significant change of circumstance that required a review of the custody order, and sought custody of the children.
The father moved to dismiss the maternal grandparents’ petition. Family Court denied the father’s motion, vacated the March 2007 consent order and reinstated the father’s petition.[2] After the hearing, Family Court awarded legal and physical custody of the children to the maternal grandparents. The father and paternal grandmother now appeal.
Initially, we see no error in Family Court’s vacatur of the March 2007 consent order. This order was premised upon the mother and children residing with the paternal grandmother. However, only weeks after the consent order was entered, and prior to the children ever taking up residence in the paternal grandmother’s home, the mother moved out of the residence and did not live with the paternal grandmother for any meaningful period of time after the order was issued and before it took effect. Family Court’s decision to vacate this order was based, in part, on its finding that the absence of the mother from the paternal grandmother’s residence constituted a significant change of circumstance in the children’s living arrangements, and we find no reason in the record to disturb it.
As for the father’s objection to Family Court’s decision to award legal and physical custody of the children to the maternal grandparents, a parent has a superior right over a nonparent to the custody of their children; this may be rebutted, however, if it can be shown that the parent has surrendered or abandoned his or her right to the child or some other extraordinary circumstance exists which demonstrates the parent’s unfitness to assume responsibility for the child’s custody and future care (see Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; Matter of Ronald I. v James J., 53 AD3d 706, 707 [2008]; Matter of *1070 Campbell v Brewster, 9 AD3d 620, 621 [2004]). In determining whether such circumstances exist, “factors to be considered include the length of time the child has lived with the nonparent, the quality of that relationship and the length of time the biological parent allowed such custody to continue without trying to assume the primary parental role” (Matter of Bevins v Witherbee, 20 AD3d 718, 719 [2005]). Here, the father did little to initiate contact with the children while they resided with the maternal grandparents. He was not involved in their school activities, had no input in their school schedule and did not interact with their teachers, medical professionals or friends. Whatever contact he did have with the children was, in almost every instance, initiated by the paternal grandmother who, during the father’s visits with the children, acted as the primary caregiver. In contrast, the children enjoyed a stable home environment during the 3% years that they have lived with the maternal grandparents. A plan has been established in the school they attend to address their individual needs. Each child participates in numerous school activities, all three attend religious education classes, and the children have developed a significant relationship with their maternal aunt and uncle who live nearby. Taken as a whole, the evidence clearly supports Family Court’s finding that extraordinary circumstances exist (see Matter of Bohigian v Johnson, 48 AD3d 904, 905 [2008]; Matter of McDevitt v Stimpson, 281 AD2d 860, 862 [2001]).
Further, Family Court’s decision that it is in the best interests of the children to continue their placement with the maternal grandparents enjoys ample support in the record (see Matter of Bennett v Jeffreys, 40 NY2d at 544; Matter of Ronald I. v James J., 53 AD3d at 707). While the children have expressed a desire to live with their father and paternal grandmother, the reality is that the maternal grandparents have, to date, assumed responsibilities that are normally attendant to a parental relationship. They have provided each child with a wholesome home environment and have been the primary source of the children’s financial, educational and emotional support. According due deference to Family Court’s evaluation of the evidence presented before it, and its determination that the maternal grandfather’s criminal conviction[3] is not a disqualifying circumstance, we see no reason to disturb its finding that it is in the best interests of *1071 the children that they remain in the physical custody of their maternal grandparents (see Matter of Ronald I. v James J., 53 AD3d at 707; Matter of Bohigian v Johnson, 48 AD3d at 905).
The father also argues that Family Court improperly reduced the time that he had been allotted to visit with his children. While he, in fact, has less time with the children under the current visitation schedule, this change was unavoidable due to the fact that this schedule must now include time for the children to visit with their mother.[4] In addition, the father’s history of exercising his visitation rights has been, at best, sporadic. As such, we conclude that Family Court’s assessment of the schedule was based on a thorough examination of the best interests of the children, and we see no reason to alter it (see Matter of Amber VV., 22 AD3d 967, 969 [2005], lv denied 6 NY3d 708 [2006]; Matter of Bevins v Witherbee, 20 AD3d at 720).
Finally, Family Court properly dismissed the paternal grandmother’s petition for custody. We note that she did not appeal from the March 2007 order that dismissed her petition but, rather, only appeals from the August 2007 order that granted the maternal grandparents custody. In any event, in support of her custody petition, the paternal grandmother was required to show the existence of extraordinary circumstances that would support a claim of custody on her behalf, and we agree with Family Court that she failed to do so (see Domestic Relations Law § 72; Matter of Carton v Grimm, 51 AD3d 1111, 1113 [2008]; Matter of Robert G. v Peter I., 43 AD3d 1162, 1164 [2007] ).
Cardona, P.J., Mercure, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

. The effective date of the consent order was delayed so that the children could remain with the maternal grandparents and finish the school year.

. Due to the failure of the mother to appear at the hearing, she was declared to be in default and her petition was dismissed. She has not filed a brief or statement in response to this appeal and has not applied for assignment of counsel.

. Family Court noted that the maternal grandfather had been convicted of a crime in connection with his operation of a family business, and was scheduled to be incarcerated for nine months of a 12-month sentence. However, the court found that the maternal grandmother was fully capable of caring for the children, and contrasted the maternal grandfather’s daily involvement in the children’s upbringing and his attendance at trial with that *1071 of the paternal grandfather, who was not a party to these proceedings nor ever appeared in court at any of the hearings or trial.

. The mother previously had custody and, thus, the father was the only parent who required such access to the children when the initial visitation schedule was established.