Matter of Craig v Thomas (2026 NY Slip Op 00751)

Matter of Craig v Thomas

2026 NY Slip Op 00751

Decided on February 11, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 11, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: BANNISTER, J.P., MONTOUR, SMITH, GREENWOOD, AND HANNAH, JJ.

998 CAF 24-01706

[*1]IN THE MATTER OF LALISA CRAIG, PETITIONER-RESPONDENT-APPELLANT,
vADAM THOMAS, SR., RESPONDENT-PETITIONER-RESPONDENT. 

THOMAS L. PELYCH, HORNELL, FOR PETITIONER-RESPONDENT-APPELLANT.
FRANCIS WM. TESSEYMAN, JR., ORCHARD PARK, FOR RESPONDENT-PETITIONER-RESPONDENT. 
KELLY M. CICCONE, ROCHESTER, ATTORNEY FOR THE CHILDREN. 

 Appeal from an order of the Family Court, Wayne County (Arthur B. Williams, J.), entered September 3, 2024, in a proceeding pursuant to Family Court Act article 6. The order, inter alia, granted respondent-petitioner sole legal and residential custody of the subject children. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the petition of petitioner-respondent LaLisa Craig is reinstated, and the matter is remitted to Family Court, Wayne County, for further proceedings in accordance with the following memorandum: In this proceeding pursuant to Family Court Act article 6, petitioner-respondent maternal grandmother and respondent-petitioner father filed petitions seeking custody of the father's twin girls after the death of their mother. Family Court effectively dismissed the grandmother's petition upon determining that she failed to establish extraordinary circumstances and granted the father custody of the children, with visitation to the grandmother. The grandmother appeals, and we reverse.
Initially, we agree with the grandmother that a subsequent order entered on consent that granted custody of the children to the grandmother does not render this appeal moot. A consent order does not by itself constitute a judicial finding or an admission of extraordinary circumstances (see Matter of Sevilla v Torres, 235 AD3d 1303, 1304 [4th Dept 2025]; Matter of Byler v Byler, 185 AD3d 1403, 1404 [4th Dept 2020]; Matter of Driscoll v Mack, 183 AD3d 1229, 1230 [4th Dept 2020], lv denied 35 NY3d 910 [2020]). Thus, the grandmother's challenge to the court's finding of no extraordinary circumstances is not affected by the subsequent order entered on consent (see generally Matter of Gorski v Phalen [appeal No. 2], 187 AD3d 1670, 1671 [4th Dept 2020]; Matter of Van Dyke v Cole, 121 AD3d 1584, 1585 [4th Dept 2014]).
It is well settled that, to have standing to seek custody, a nonparent must demonstrate "extraordinary circumstances, illustratively, surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time" (Matter of Bennett v Jeffreys, 40 NY2d 543, 546 [1976]; see Matter of Adams v John, 227 AD3d 1395, 1397 [4th Dept 2024]). If extraordinary circumstances exist, "the disposition of custody is influenced or controlled by what is in the best interest of the child" (Bennett, 40 NY2d at 544). In other words, "[t]he nonparent has the burden of proving that extraordinary circumstances exist, and until such circumstances are shown, the court does not reach the issue of the best interests of the child" (Adams, 227 AD3d at 1397 [internal quotation marks omitted]).
We agree with the grandmother that she met her burden of establishing the existence of extraordinary circumstances. The extraordinary circumstances analysis "must consider the cumulative effect of all issues present in a given case and not view each factor in isolation" [*2](Matter of Byler v Byler, 207 AD3d 1072, 1074 [4th Dept 2022], lv denied 39 NY3d 901 [2022] [internal quotation marks omitted]; see Matter of Lachenauer v Lachenauer-Myers, 236 AD3d 1309, 1309-1310 [4th Dept 2025]).
The evidence here established that, in 2018, the father was arrested and incarcerated until 2022. During that time, the children resided with the mother in the grandmother's home until October 2021, when the grandmother moved out. The father never saw the children while he was incarcerated, rarely spoke with them, and never sent them cards, letters, or gifts. When the father was released from incarceration, the mother asked him to take custody of the children, which he did starting in July or August 2022; the grandmother visited with the children on the weekends. The mother died less than a year later, and the children lived with the grandmother during the summer of 2023. In September 2023, the parties filed petitions seeking custody of the children, and the court granted the grandmother temporary custody of the children, with the father having visitation. From that time until the conclusion of the hearing in July 2024, the father did not visit with the children and rarely communicated with them.
We conclude that the cumulative effect of the father's extended incarceration, his failure to maintain contact with the children during that time, the children's resulting bond with the grandmother, and the father's failure to maintain contact with the children during the pendency of the hearing, is sufficient to establish extraordinary circumstances (see Matter of Robert XX. v Susan YY., 202 AD3d 1389, 1390 [3d Dept 2022], lv denied 38 NY3d 907 [2022]; Matter of Ciriaco v Hall, 191 AD3d 872, 873-874 [2d Dept 2021]; Matter of Moynihan v Cohen, 181 AD3d 965, 967 [2d Dept 2020]). We therefore reverse the order, reinstate the grandmother's petition, and remit the matter to Family Court to make a determination regarding the best interests of the children, following an additional hearing if necessary.
Entered: February 11, 2026
Ann Dillon Flynn
Clerk of the Court