In the Matter of PATRICIA TYRRELL, Appellant, v LILLIAN TYRRELL, Respondent.

Fourth Department, April 13, 1979

**APPEARANCES OF COUNSEL**

*Davidson, Fink, Cook & Gates (S. Gerald Davidson* of counsel), for appellant.

*Julius Michaels* for respondent.

HANCOCK, JR., J.

Petitioner-appellant, Patricia Tyrrell, in this habeas corpus proceeding seeks to regain custody of her child, Dana, from respondent, Lillian Tyrrell, the child's stepmother. Dana's father, Donald Tyrrell, Patricia's former husband, is now deceased. Respondent, Donald's widow, married him after Patricia and Donald were divorced. Special Term held that extraordinary circumstances existed which would warrant its making "the disposition that is in the best interest of the child" *(Matter of Corey L. v Martin L.,* 45 NY2d 383, 391, quoting *Matter of Bennett v Jeffreys,* 40 NY2d 543, 548; see *Raysor v Gabbey,* 57 AD2d 437). It found that Dana's best interest would be served by leaving her in the custody of respondent and denied the writ. We reverse.

■ It is a fundamental rule that "[t]he parent has a 'right' to rear its child, and the child has a 'right' to be reared by its parent." The right is not absolute, however, and it will not be "enforced inexorably, contrary to the best interest of the child" where extraordinary circumstances are present, "illustratively, surrender, abandonment, persisting neglect, unfitness, and unfortunate or involuntary disruption of custody over an extended period of time" *(Matter of Bennett v Jeffreys, supra,* p 546). Before custody may be awarded to a nonparent based on the best interest of the child against the wishes of a parent, the court must make the threshold determination that extraordinary circumstances exist. The best interest of the child, as such, is not involved in this threshold question. Thus, courts have "not hesitated to hold that a parent cannot be displaced because 'someone else could do a "better job" of raising the child'" *(Matter of Corey L. v Martin L., supra,* p 391).

"Extraordinary circumstances" have been found to exist where the natural mother had placed the child with an agency which placed him with foster parents with whom he resided for six and one-half years *(Matter of Jonathan D.,* 62 AD2d 947); where the natural mother (who was unmarried, lived with a married man, and had a history of emotional problems and drinking) had surrendered the child to its grandmother for an extended period of time *(People ex rel. Wilson v Wilson,* 56 AD2d 794); and where a pattern of

persistent neglect was established by the failure of the natural mother to plan for her children's future (Matter of Jean Yvette E., 59 AD2d 907).

In the case at bar, Dana's parents, Donald and Patricia Tyrrell, separated in June of 1969 when Dana was 16 months old. Patricia, who kept Dana initially, worked full time, taking home $80 per week. She was required to leave Dana with babysitters during the day, which cost $20 per week. She received no money from Donald after the first few weeks of separation.

In February of 1970 Patricia, on her own initiative, relinquished custody of the child to Donald, who was living with his parents. Her stated reason was that due to lack of enough money to support herself and Dana and her inability to be with Dana during the day, she believed it would be in Dana's best interest for Dana to live with Donald and his parents. In June, 1972 Donald and Patricia were divorced, and in August, 1972 Donald married respondent Lillian Tyrrell. A son was born of this marriage in 1974. Soon after Donald's death in December, 1977 Patricia initiated the present proceeding for custody of Dana. Although there is some dispute concerning the regularity of Patricia's visitation with Dana prior to the divorce, it is undisputed that, subsequent thereto, visitation was regular and frequent and that Patricia maintained a close and continuing relationship with Dana. Indeed, at the time of Donald's death, a motion by Patricia for increased visitation was pending in Supreme Court.

Special Term dismissed petitioner's writ of habeas corpus and awarded custody of Dana to respondent. It found that the evidence revealed a "wholesome, active and mutually loving relationship between Patricia and Dana." Nevertheless the court found extraordinary circumstances sufficient to trigger the "best interests" test under Bennett v Jeffreys (supra) in Patricia's agreement, forced upon her by economic circumstances, to place Dana in the custody of Donald in February of 1970 and in the continuation of this agreed-upon custodial arrangement until the time of Donald's death. The court also concluded that the death of the father and birth of the half brother constituted additional extraordinary circumstances and that it was in Dana's best interest that she continue in the care and custody of respondent. It expressly found that petitioner was fit to be a custodial parent.

We hold that as presented here the acquiescence of one

of the estranged parents of a child to placement of the child in the custody of the other and the continuation of that custodial arrangement while both parents are living does not amount to a voluntary surrender of the child to a nonparent and does not constitute the "extraordinary circumstances" required in *Bennett v Jeffreys (supra)*.

In all of the cases where extraordinary circumstances have been found to exist there has been clear evidence of unfitness or proof of an intention to surrender all parental responsibilities or of a lack of interest in the child combined with acquiescence in custody by a nonparent. For example, in *People ex rel. Gallinger v Gallinger* (55 AD2d 1036) extraordinary circumstances were found where the mother surrendered the child to her estranged husband, who with the mother's knowledge, placed the child with its paternal grandparents. For three years the mother, who was capable of caring for the child but preferred living with a paramour, had no contact with the child. By comparison, in the case at bar the mother never acquiesced in custody by a nonparent and indeed brought the present proceeding when Donald's custody ceased. Further, she relinquished custody for the sake of the child and maintained close relations with her (cf. *Matter of Bennett v Jeffreys*, 40 NY2d 543, *supra; Matter of Jonathan D.*, 62 AD2d 947, *supra;* and *People ex rel. Wilson v Wilson*, 56 AD2d 794, *supra,* all of which involve, *inter alia,* custody by a nonparent). In *Raysor v Gabbey* (57 AD2d 437, *supra)* the mother retained custody of the child and upon the mother's death the father, who was not married to the mother, sought custody. The court found extraordinary circumstances present because of the child's lifelong separation from her father and her mixed racial background. Such considerations are not present in the case at bar.

Here, it appears that during Donald's lifetime Patricia thought that to allow Dana to live with her father would be in Dana's best interest. While Patricia's long-continued acquiescence in this custodial agreement could well have barred her in efforts to regain custody from Donald had she attempted it, it should not impair her parental right to custody as opposed to the right of a nonparent to whom she never surrendered custody. A precedent to the contrary would, we believe, hinder the settlement of custody disputes between parents because a parent's voluntary consent to custody in the other parent could mean eventual loss of the child to a stepparent. As we

perceive them the circumstances of Patricia, Donald, and Dana until the time of Donald's death were no different from those of thousands of families where the parents are divorced or separated and where one parent has made the painful decision that under all the circumstances it would be best to agree to give custody of the child to the other. Nor is it unusual for the custodial parent to remarry and have children by the second spouse, or, as unfortunately has happened here, to die. To hold that these factors rise to the level of "extraordinary circumstances" after the death of the custodial parent so that the surviving parent has no greater right to custody than a nonparent is, in our opinion, a misreading of *Bennett v Jeffreys (supra)* and the cases which follow it. If this were the rule, the requirement of a showing of "extraordinary circumstances" would no longer be the accepted threshold test for the protection of parental rights. The test in most custody cases, whether between parents or between parents and nonparents, would be the best interest of the child. Such a result would nullify the presumption in favor of the natural parent and the rule that "[i]n no case may a contest between parent and nonparent resolve itself into 'a simple factual issue as to which [affords] the better surroundings, or as to which party is better equipped to raise the child' " *(People ex rel. Kropp v Shepsky,* 305 NY 465, 469, quoting *People ex rel. Portnoy v Strasser,* 303 NY 539, 542).

The judgment should be reversed and the petition granted.

MOULE, J. (dissenting). Petitioner seeks custody of her 11-year-old daughter upon the death of the child's father who had custody since shortly after he and petitioner separated in 1969. Respondent stepmother married the father in 1972 and has lived with the child continuously since that time. Supreme Court held that petitioner's not having had custody of the child for over eight years, the attachment the child formed for respondent, who has supervised the child's upbringing and education since 1972, and the birth of a half brother in 1974 constituted extraordinary circumstances such that custody should be determined by inquiry into the best interest of the child. The court found that, notwithstanding petitioner's competence to have custody, her good relationship with the child and her regular visitation with the child, it was in the child's best interest to continue living with respondent. The court awarded custody to respondent and liberal visitation to petitioner.

The State may not deprive a natural parent of the custody of a child absent surrender, abandonment, unfitness or other extraordinary circumstances such an unfortunate or involuntary disruption of custody over an extended period of time *(Matter of Bennett v Jeffreys,* 40 NY2d 543, 546). If such circumstances are present which would affect the child's welfare, the court must base its custody decision on the best interest of the child (p 544).

We find that the facts of this case present extraordinary circumstances such that the court properly inquired into the best interest of the child (see *Matter of Jonathan D.,* 62 AD2d 947; *Raysor v Gabbey,* 57 AD2d 437; *Matter of Robertson v Robertson,* 54 AD2d 1081). The child has lived with respondent, whom she calls "Mommy", continuously for six years since the age of four and has developed with her a secure, stable and continuing parent-child relationship such that respondent appears to have become the child's accepted parent. In addition, the birth of a half brother four years ago and the death of her father in December, 1977 are further extraordinary circumstances that make inquiry into the child's best interest desirable.

The continued relationship that petitioner, whom the child calls "Pat", maintained with the child through exercise of weekly visitation does not negate the extraordinary circumstances, but rather is relevant in consideration of the child's best interest.

The court conducted a thorough investigation into the best interest of the child, including reports by the Probation Department, a psychological evaluation and an interview, in chambers, with the child. Both petitioner and respondent appear to be caring, able parents. The court determined that stability and security were prime considerations in this period of the child's life and that the best interest of the child was to continue living in the family unit in which she had been raised. In situations such as this, where the court below carefully developed the pertinent facts and had ample opportunity to scrutinize the various parties, its decision should be respected *(Safchik v Safchik,* 54 AD2d 928).

SCHNEPP and DOERR, JJ., concur with HANCOCK, JR., J.; CARDAMONE, J. P., and MOULE, J., dissent and vote to affirm the judgment in an opinion by MOULE, J.

Judgment reversed, without costs, and petition granted.