■ In the Matter of DONALD E. PERNICE, Respondent, v DANIEL R. COTE, Appellant.—Weiss, J. Appeal from an order of the Family Court of Delaware County (Estes, J.), entered October 31, 1984, which granted petitioner's application for custody of Allison Michelle Cote.

Allison Michelle Cote was born in August of 1977 to respondent and Judith Cote Pernice (hereinafter decedent), who resided in Bridgeport, Connecticut, with decedent's two children from a previous marriage. In August of 1980, decedent and the children moved to the Town of Delhi, Delaware County, near a parcel of land she and respondent owned. It was understood that respondent would continue to reside in Bridgeport for employment purposes and commute weekly or monthly until his anticipated retirement two years away. Shortly after the relocation, respondent and decedent separated and subsequently divorced in 1981. Decedent remained in Delhi and retained custody of Allison and her other two children, and respondent, residing in Connecticut, obtained extensive visitation rights. In 1982, decedent married petitioner. However, decedent had been suffering from cancer for several years and passed away in November of 1983. Petitioner surrendered decedent's two children from her first marriage to their natural father, but commenced a proceeding to obtain custody of Allison. Respondent also petitioned for custody of Allison and the proceedings were consolidated for trial by agreement of counsel. After finding that extraordinary

circumstances existed which necessitated an examination of Allison's best interests, Family Court granted custody of Allison to petitioner. This appeal by respondent ensued.

We reverse. In our view, Family Court lacked an adequate basis for finding that extraordinary circumstances existed warranting further inquiry into the best interests of the child for purposes of determining who should have custody *(see, Matter of Bennett v Jeffreys,* 40 NY2d 543). We recognize that by his own testimony, respondent failed to maintain contact with his daughter for at least 14 months prior to decedent's death, and that his excuse may have appeared less than justifiable. While respondent maintains that decedent resisted his visitation efforts during this period, there is no indication that he ever attempted to protect his interests by resort to judicial proceedings *(see, Matter of Male Infant L.,* 61 NY2d 420), a failure that is difficult to fathom. Nonetheless, the fact remains that respondent is the natural parent of Allison, and other than his noted 14-month lapse, has maintained a continuing relationship with her.

Although not subject to specific definition, the "extraordinary circumstances" necessary to separate a child from his or her natural parent must be "compelling" *(Matter of Bennett v Jeffreys, supra,* p 552). While respondent voluntarily surrendered custody to decedent in 1980, that arrangement certainly does not constitute an extraordinary circumstance *(see, Matter of Tyrrell v Tyrrell,* 67 AD2d 247, 249-250, *affd* 47 NY2d 937). Indeed, upon stipulating to custody with decedent in settlement of their divorce action, respondent reserved significant visitation rights. It is important to recognize that respondent acquiesced in decedent's custody, not petitioner's. Nor should we gloss over the fact that it was decedent who advised respondent, shortly after moving to Delhi that their marriage was terminated and that she would transport Allison back to Bridgeport for visitation purposes, an agreement she abruptly rescinded. Moreover, respondent faithfully continued his child support throughout this period.

Family Court determined that both parties are in a position to properly attend to the child's material needs. And while it is apparent that the child has an emotional bond with petitioner, and has thrived in his care, it is equally apparent that respondent has demonstrated a sincere desire to raise his child. In our view, the 14-month separation, while unfortunate in view of the tragic circumstances attendant to decedent's illness, was not so compelling as to deprive respondent of his fundamental parental rights *(see, Matter of Male Infant L.,* 61

NY2d 420, 426-427, *supra; cf. Matter of Abendschein v Gatti,* 105 AD2d 1101 [prolonged separation, lack of established household and alcohol abuse]; *Matter of Jonathan D.,* 62 AD2d 947, *lv denied* 45 NY2d 706 [6½-year placement with foster parents]; *People ex rel. Gallinger v Gallinger,* 55 AD2d 1036 [three years without contact]). This is particularly the case since Allison is fully aware that respondent is her natural father. It follows that the question of the child's best interests does not arise and respondent is entitled to an award of custody. Accordingly, the order of Family Court should be reversed and custody of Allison awarded to respondent.

Order reversed, on the law and the facts, without costs, and custody of Allison Michelle Cote awarded to respondent. Kane, J. P., Weiss, Yesawich, Jr., and Harvey, JJ., concur.

Levine, J., dissents and votes to affirm in the following memorandum. Levine, J. (dissenting). I respectfully dissent. In rejecting Family Court's finding of the existence of extraordinary circumstances permitting an inquiry into the infant Allison's best interests, the majority focuses entirely on one factor, the absence of visitation by the natural father (respondent) for a period of some 14 months from September 1982 through most of December 1983. That period of absence of contact was admitted by respondent. The majority then concludes that, apart from the foregoing hiatus, respondent "maintained a continuous relationship" with the child. The only support in the record for this statement is the testimony of respondent that he regularly saw the child on a monthly basis before September 1982. However, this assertion was in conflict with most of the other evidence adduced at the trial, including that of the stepfather (petitioner), the maternal grandmother and one of respondent's own witnesses. Their testimony would fix the period of total absence of parent-child contact from about 23 months to well over two years. Family Court found the gap in visitation was *at least* 14 months and may have been up to more than two years. Moreover, visitation before September 1982 was at best spotty. Respondent admitted that he did not see the child for some three months up to late February 1981. At the very same time he claimed to have made regular monthly visits until the fall of 1982, he was also excusing his lack of regular contact on the basis of the mother's continuous interference with his attempts to see the child. Family Court, which saw and heard respondent on the witness stand, largely discredited his testimony. Thus, the majority's characterization of a continuing parent-child relationship is yet another instance where this court is applying

the substantive legal principles favoring natural parents to resolve purely factual disputes and issues of credibility against the nonparental party (see, Matter of Amy SS, 100 AD2d 657, 658 [dissenting opn], revd 64 NY2d 788). There is no special exception in custody disputes from the general rule that an appellate court should defer to the court at nisi prius on issues of credibility (see, Arnold v State of New York, 108 AD2d 1021, 1023, appeal dismissed 65 NY2d 723; Huertas v State of New York, 84 AD2d 650, 651).

Apart from the lack of visitation already discussed, the majority totally ignores other evidence showing a pattern of indifference, or certainly, as Family Court found, a placing of respondent's own self-interest above that of the child's. This included removing the mother's sole means for transportation while she and the child were living in a remote, isolated area, his failing to provide a telephone number at which he could be reached in the event of any emergency involving the child, and failing to maintain contact through letters, gifts or by telephone during the entire time before December 1983 during which he failed to visit. This latter, total withdrawal of all emotional support for the child spanned the period of the mother's last illness, a fact of which respondent was well aware. Respondent thus totally abdicated his parental role to petitioner at the time of the child's greatest need.

In my view, the totality of the foregoing circumstances, all of which were found by Family Court on the prevailing weight of the credible evidence, supports Family Court's conclusion that extraordinary circumstances were established. The evidence also overwhelmingly supports Family Court's further conclusion that the child's best interests dictated an award of custody to petitioner. For these reasons, I would affirm Family Court's order.