■ In the Matter of NADIA KAY R. FRED D. et al., Appellants; STEVEN EDWARD R., Respondent.—In a child custody proceeding, the petitioners appeal (1) from an order of the Supreme Court, Suffolk County (Baisley, J.), dated June 12, 1985, which, *inter alia,* appointed a guardian ad litem, and (2) from an order of the same court, dated August 12, 1985, which, *inter alia,* dismissed the proceeding.

Justice Weinstein has been substituted for the late Justice Gibbons *(see,* 22 NYCRR 670.2 [c]).

Ordered that the appeal from the order dated June 12, 1985, is dismissed, without costs or disbursements, as abandoned, and it is further,

Ordered that the order dated August 12, 1985, is affirmed, without costs or disbursements.

This is a proceeding to establish who shall have custody of Nadia Kay R., who is now six years old. The petitioners are the sister of Nadia's mother and the sister's husband. The respondent is Nadia's father. Nadia's parents were living in Knoxville, Tennessee, when they divorced in 1982, agreeing that Nadia's mother would have custody and that the respondent would pay child support in the amount of $30 per week. Shortly thereafter Nadia and her mother moved to the New

Orleans, Louisiana, area, where the mother's brother lived. The respondent father alleged, without contradiction, in papers submitted to this court in opposition to the petitioners' motion for a stay of the order appealed from, that (1) his wife left without leaving an address and (2) his attempts to contact his wife and their child, through his former brother-in-law in New Orleans were rebuffed by the latter. As a result, the respondent lost touch with Nadia and her mother, stopped paying child support, and had no further contact with Nadia until this proceeding.

In June 1984 Nadia's mother died in New Orleans, apparently the victim of a murder. The local police authorities contacted the mother's brother, who took Nadia to her maternal grandparents in Albany, New York. The family thereafter decided that Nadia would live with the petitioners, and they brought her from Albany to their Long Island home, where she has resided since. Apparently no attempt was made, however, prior to these proceedings, to contact the respondent and advise him of the whereabouts of his daughter.

This proceeding was initially commenced in the fall of 1984, approximately four months after the natural mother's death, in order to establish the legal right of the petitioners to Nadia's custody. Attempts to serve the respondent personally with the petition were unsuccessful, and the petitioners were permitted to effect service by mailing the petition to the respondent in care of his last known employer and in care of general delivery in Lancaster, Kentucky, where he was known to have been working. When he did not appear on the return date of the motion or at the hearing which was ordered, a guardian ad litem was appointed to protect Nadia's interests. The guardian ad litem, according to his own statement, had little difficulty in locating the respondent through his father and brother, both of whom live in Knoxville. It was only at this point that the respondent learned of the death of his former wife. The guardian ad litem reported that he had spoken at length with the respondent, and that the respondent desired to have custody of Nadia and live with her in Knoxville. The respondent also stated to the guardian ad litem that a friend, after hearing the news, had offered him a job in Knoxville, which would not involve as much traveling as he had been doing, and which the respondent indicated that he intended to accept.

Shortly after being notified of this proceeding by the guardian ad litem, the respondent traveled to New York to assert his rights and reestablish contact with his daughter. Special

Term dismissed the petition, giving the Suffolk County Department of Social Services temporary custody of Nadia for 30 days, until the respondent could arrange to take actual custody. The order permitted the department to allow Nadia to remain with the petitioners during that period, and that is where Nadia currently resides, pursuant to a stay granted by this court.

As Nadia's only living natural parent, the respondent has a claim to her custody superior to that of all others, and cannot be displaced in the absence of " 'surrender, abandonment, persisting neglect, unfitness or other like extraordinary circumstances' " *(Matter of Male Infant L.,* 61 NY2d 420, 427, quoting from *Matter of Bennett v Jeffreys,* 40 NY2d 543, 544). The burden of establishing the existence of such "extraordinary circumstances" is upon the petitioners *(see, Matter of Darlene T.,* 28 NY2d 391, 394) and if established, merely triggers a best interests of the child hearing *(Matter of Bennett v Jeffreys, supra).* Special Term correctly found that petitioners had failed to carry their burden.

The respondent's relinquishment of Nadia to her mother at the time of the divorce does not constitute an abandonment *(see, Matter of Merritt v Way,* 85 AD2d 666, *affd* 58 NY2d 850; *Matter of Tyrrell v Tyrrell,* 67 AD2d 247, *affd* 47 NY2d 937 *on opn at App Div).* Thereafter, it was the mother who relocated with Nadia away from the area of the former marital residence, without giving a new address, and, together with her brother, made it difficult, if not impossible, for the respondent to maintain contact with his daughter. Under these circumstances, it cannot be said that the respondent evinced " 'a settled purpose to be rid of all parental obligations and to forego all parental rights' " *(Matter of Susan W. v Talbot G.,* 34 NY2d 76, 80, quoting from *Matter of Maxwell,* 4 NY2d 429, 433), which is the *sine qua non* of an abandonment *(see, Matter of Dickson v Lascaris,* 53 NY2d 204). Moreover, it is important to note that the respondent acquiesced in giving custody to his former wife, not to the petitioners *(see, Matter of Pernice v Cote,* 116 AD2d 945), and that he moved to assert his parental rights as soon as he was advised of the present situation.

Nor are there other "extraordinary circumstances" which would justify depriving the respondent of his right to custody and Nadia of her right to be raised by her natural father. There is no evidence upon which a finding of unfitness could be premised. The fact that the respondent's employment, while unburdened with familial obligations, involved extensive

travel, does not mean that upon accepting the burden of parenting he will not make whatever arrangements are necessary to shoulder it. His statements to the guardian ad litem indicate that he is prepared to do just that.

Finally, this case does not involve the "extraordinary circumstances" of "prolonged separation" of the child from the natural parent while in the custody of a nonparent *(Matter of Bennett v Jeffreys,* 40 NY2d 543, 544, *supra).* The case of *Matter of Merritt v Way* (85 AD2d 666, *affd* 58 NY2d 850, *supra),* whose facts closely mirror those at bar, is instructive in this regard. In that case, the mother took custody of the subject child following a divorce, and the respondent father was ordered to pay child support. Thereafter, the father moved to Nevada. Visitation between the father and child was infrequent for the first two years due to obstacles erected by the mother. After that, the father did not see the child or pay support for approximately four years. Toward the end of this period, the child's mother died. The mother's sister, i.e., the petitioner therein, and her husband, took the child into their home. The father was not informed of these happenings, and accidentally learned of the death after four months. The Family Court concluded that the father had not been shown to have forfeited his right to custody of his son, there having been insufficient proof of surrender, abandonment, unfitness, persistent neglect, or other extraordinary circumstances. Accordingly, it denied the petition and awarded custody to the respondent natural father.

In affirming the Family Court's dismissal of the custody petition, this court held, *inter alia (Matter of Merritt v Way,* 85 AD2d, *supra,* p 667):

"In a custody dispute between a nonparent and a natural parent, if the former would defeat the latter's prima facie right to custody on the sole ground of the child's best interests, he must first show the existence of 'extraordinary circumstances'. *(Matter of Bennett v Jeffreys,* 40 NY2d 543.) * * *

"Alternatively, it is suggested that there may have been the extraordinary circumstance of a voluntary separation of protracted length in combination with certain other factors, such as strong negative feelings of the child toward the natural parent, attachment to the nonparent, and limitations of the former fully to parent his child, not, in themselves, constituting unfitness. We reject these suggestions * * *

"It should also be observed that, although the subject child expressed a preference to remain with petitioner and her

husband, the Family Court found that there was no evidence of negative feelings towards respondent, nor of any strong attachment to petitioner and her husband, with whom he had resided for only six months before the commencement of this proceeding".

What the petitioners, as well as our dissenting colleague, argue is essentially that Nadia's best interests will be served by allowing her to remain with them. In a custody contest between parent and nonparent, however, a best interests hearing is not triggered until the "extraordinary circumstances" already discussed have been established (*Matter of Merritt v Way*, 58 NY2d 850, *supra; Matter of Bennett v Jeffreys*, 40 NY2d 543, *supra*). This is not even a matter of discretion; until such "extraordinary circumstances" are demonstrated, the court is without power to deprive the parent of custody (*see, Matter of Male Infant L.*, 61 NY2d 420, 427, *supra; Matter of Bennett v Jeffreys*, 40 NY2d 543, 548, *supra; Matter of Spence-Chapin Adoption Serv. v Polk*, 29 NY2d 196, 199; *People ex rel. Kropp v Shepsky*, 305 NY 465, 468). On this record, they have not been demonstrated. Special Term would have erred as a matter of law, therefore, had it granted the petition. Accordingly, the order dismissing the petition should be affirmed. Lazer, J. P., Mangano and Bracken, JJ., concur.

Weinstein, J., concurs in part and dissents in part and votes to dismiss the appeal from the order dated June 12, 1985, and to reverse the order dated August 12, 1985, and to remit the matter to the Supreme Court, Suffolk County, for further proceedings consistent herewith, with the following memorandum: I am compelled to take issue with the majority's conclusion that the "extraordinary circumstances" necessary to trigger a best interests hearing have not been established in the instant case. In my view, the evidence currently before us does not warrant the transfer of physical custody of the subject six-year-old infant from her loving and caring aunt and uncle, with whom she has lived for more than two years, to her natural father who, for several years, had shown little concern or love for her. A precipitous action of this nature, without a full inquiry into whether the best interests of the child would be advanced by such a transfer, is likely to result in a grievous injustice to the infant. Consequently, a reversal of the order dismissing the petition of the aunt and uncle is warranted.

The girl's aunt (who is the sister of her late mother) and uncle have lovingly cared for the child since the tragic death of her mother in 1984. By contrast, the limited record devel-

oped in this custody proceeding reveals that the natural father has wholly ignored both his legal and moral obligations to the child since his separation and divorce from the girl's mother.

On November 5, 1980, the subject infant was born to the respondent father and his wife, who had been married in June of that year. The parents were divorced in September 1982 in the State of Tennessee. Pursuant to an agreement between the parents, the mother assumed custody of the child, while the father was to pay $30 per week for the girl's support. In May 1983 mother and child left Tennessee and lived for several months with the mother's relatives in Albany, New York. In September 1983 they moved to New Orleans, Louisiana, where, after a brief stay with the mother's brother, they began to live in their own apartment in a suburb of New Orleans.

In June 1984 the child's mother was murdered in that apartment. For three horrifying days, the little girl, unable to call for help, remained alone with the body of the mother. Finally, the police learned of the murder and delivered the child to the temporary custody of the mother's brother. Shortly thereafter, he and the child flew to Albany, where he entrusted her care to the parents of her aunt. The petitioners herein, the child's aunt and uncle, immediately drove to Albany from their Suffolk home in order to be with the little girl. In accordance with the deceased mother's expressed wishes, the family agreed that the child should be brought up and cared for by her aunt and uncle. After a two-week stay in Albany, the aunt and uncle returned to Long Island where the child, who was extremely traumatized by these tragic events, continues to live to the present day in a caring and nurturing environment.

The natural father, on the other hand, has not seen or spoken to the child, nor has he made any support payments, since her departure from Tennessee in May 1983. His only proffered excuse is that his former wife left no address when she and the girl left Tennessee, and that when he telephoned the mother's brother in New Orleans, the brother refused to apprise him of their whereabouts.

The petitioners commenced the underlying custody proceeding in February 1985. Copies of the order to show cause were sent to the respondent natural father's last known home and employment addresses, but were returned unclaimed. Other efforts to locate the respondent were unsuccessful, and when he failed to appear at a hearing on March 29, 1985, Special

Term appointed a guardian ad litem to act on behalf of the child. Finally, in July 1985 the guardian ad litem succeeded in telephoning the father of the respondent in Knoxville, Tennessee. It was only then that the respondent, who had been working in Florida, became aware of the death of his ex-wife and the whereabouts of his daughter. In subsequent telephone conversations with the guardian ad litem, the respondent expressed a desire to be reunited with and to assume custody of his daughter. However, he has offered no explanation, on this record, for his continuing failure to visit with the child or to make support payments, even though he is now fully aware of her residence. Although the respondent has stated that he would like to make his home in Knoxville, Tennessee, he apparently has no definite plans for employment which would require less travel than does his current position.

It bears noting that the guardian ad litem, who interviewed the little girl along with her aunt and uncle, was quite impressed with their ability to care for and raise the child, and believes that it would be extremely difficult for her to return to her father's custody. Indeed, she is, at this point a stranger to her father with whom she has had virtually no contact since she was 1½ years old.

Although a natural parent may not be deprived of the custody of his child absent surrender, abandonment, neglect, unfitness, or other extraordinary circumstances (see, Matter of Merritt v Way, 58 NY2d 850, 853; Matter of Bennett v Jeffreys, 40 NY2d 543), this does not mean that such extraordinary circumstances can never be found. Present here are many of the same factors that the Court of Appeals found to constitute extraordinary circumstances in Matter of Bennett v Jeffreys (supra, p 550). This includes such factors as the "protracted separation of [the father] from child, combined with the [father's] lack of an established household of [his] own, [his] unwed state, and the attachment of the child to the custodian". Here, where the father has virtually abandoned his daughter and where the aunt and uncle have been conscientious and caring guardians, it would be an egregious error to precipitously return the girl to her apparently neglectful and uncaring father. I am convinced that extraordinary circumstances exist here so as to require a determination of what is truly in the best interests of the child (see, Matter of Merritt v Way, supra). Accordingly, I vote to reverse the order and remit the proceeding to the Supreme Court, Suffolk County, so that a full inquiry can be undertaken to determine how the best interests of this little girl might truly be served.